Phillip Robinson
Consumer Law Center, LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
phillip@marylandconsumer.com
Tel: 301-448-1304
PRO HAC VICE ADMISSION PENDING

(Complete counsel information below)

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **JOSEPH A. TATE**, | Case No. |
| On behalf of himself individually and on behalf of a Class of similarly situated persons, | CLASS ACTION COMPLAINT (Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, *et seq.*; Oregon Unlawful Trade Practices Act, ORS 646.608, *et seq.*) |
| vs. | |
| **FREEDOM MORTGAGE CORPORATION**, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## CLASS ACTION COMPLAINT:

Plaintiff Joseph Tate ("Tate" or "Named Plaintiff"), on his individual behalf and on behalf of a class of similarly situated individuals defined *infra*, by his undersigned attorneys, and pursuant to Fed.R.Civ.P. 23 (Class Actions), sues Freedom Mortgage Corporation ("Freedom" or "Defendant"). The Plaintiff, on behalf of himself and the class members, demands a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of his Class Action Complaint, states:

Page 1 – COMPLAINT

## INTRODUCTION:

1.      In these instances, such as the underlying matters involving Freedom, the mortgage servicer places its interest and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers.   Moreover, Freedom unfairly and deceptively ignores its statutory and contractual duties including those which were agreed to as part of their license to legally operate in the State of Oregon (License No. MS-31) and nationwide.   These conclusions are known to Freedom and supported by the facts discussed *infra* and also in its own public admissions including:

      a.      Freedom's settlement agreement with the Commonwealth of Virginia on February 4, 2016, in which the Commissioner of Financial Institutions found that Freedom had violated Virginia's mortgage laws.

      b.      Freedom's Consent Order with the Consumer Financial Protection Bureau, dated June 5, 2019, finding that Freedom routinely manipulated mortgage data related to borrowers and knowingly and recklessly reported inaccurate data related to its mortgage borrowers.

      c.      Multiple other consent orders and settlements concerning Freedom's unsafe and unsound practices, including the States of Alaska, California, Connecticut, Hawaii, Kentucky, Massachusetts, Minnesota, Montana, Ohio, Oklahoma, and Washington.   These are all publicly available at: https://www.nmlsconsumeraccess.org/.

2.      These practices are compounded when homeowners, like Tate and the putative class members, try in good faith to resolve their situation and Freedom disregards its duty to conduct a reasonable investigation of their notices of error and makes material misstatements of

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

law in reply which confirm the underlying claim in this matter—i.e. that Freedom as a pattern and practice violates its remedial, statutory duty pursuant to Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605(e)(3)("RESPA") which states:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

*Id.*

3.    Under its authority granted to it pursuant to Dodd-Frank legislation, the Consumer Financial Protection Bureau ("CFPB") has further imposed this duty on Freedom and other mortgage servicers in 12 C.F.R. § 1024.35(i)(1)("After receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error"). However, as shown *supra*, Freedom has also failed its mandatory duty to "comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter" which includes 12 C.F.R. § 1024.35(i)(1). 12 U.S.C.A. § 2605(k)(1)(E).

4.    There is no question that RESPA was intended and is considered remedial legislation. *See e.g. Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013)("As a remedial statute, RESPA is construed broadly to effectuate its purposes"); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012)("RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose"). *See also* DODD–FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, PL 111-203, July 21, 2010, 124 Stat 1376. Dodd-Frank was specifically enacted to "improv[e]

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

accountability and transparency in the financial system…[and] to protect consumers from abusive financial services practices." *Id.*

5.      Yet, as a matter of standard policy and practice, Freedom disregards the express requirements in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) to cease furnishing or providing, for a period of sixty days, adverse information to any consumer reporting agency regarding any payments or sums demanded due that are subjects of the Qualified Written Requests/Notices of Error ("QWR/NOE") received from Tate and the Class members. It simply continues the disputed, adverse reporting with knowing and reckless disregard to the rights of the Plaintiff and Class members.

6.      In response to Tate's QWR/NOE dated June 29, 2020, which Freedom received and acknowledged as a QWR/NOE in correspondence dated July 6, 2020, as part of its consistent policy, practice and pattern, Freedom:

    a.    Did not correct its errors related to Tate's mortgage account and continued to claim he owed it sums which he did not owe; and

    b.    Did not suppress the negative credit reporting information for sums related to the Tate QWR/NOE that was in dispute as it was required to do so 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).

7.      In response to Tate's second QWR/NOE dated July 26, 2022, which Freedom received and acknowledged as a QWR/NOE in correspondence dated August 4, 2022, as part of its consistent policy, practice and pattern, Freedom:

    a.    Did not correct its errors related to Tate's mortgage account and continued to claim he owed it sums which he did not owe; and

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

b.  Did not suppress the negative credit reporting information for sums related to the Tate QWR/NOE that was in dispute as it was required to do so 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).

8.  It is plain legal error for Freedom to disregard its mandatory duties under RESPA, i.e. 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) and continue to report information to third parties that it is required by law and regulation to suppress.

9.  Twelve C.F.R. § 1024.35(i)(1) was promulgated by the CFPB in a Final Rule that became effective on January 10, 2014. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01. In issuing its Final Rule the CFPB explained:

> Industry commenters strongly objected to the 60-day reporting prohibition. Commenters said the proposal undermines the accuracy and integrity of credit reports. One commenter said the Fair Credit Reporting Act already governs credit reporting. One large bank commenter asserted that because credit reporting is a safety and soundness protection, banks have a duty to accurately report delinquencies. Several industry commenters also noted a concern that, based on prior experience, borrowers may use the reporting prohibition to manipulate the system by disputing legitimate delinquencies in order to apply for credit without derogatory marks on credit reports. The Bureau acknowledges the concerns expressed but notes that Congress specifically imposed the 60-day reporting prohibition with respect to qualified written requests in section 6(e) of RESPA. As discussed above, **the Bureau believes it is necessary to achieve the consumer protection purposes of RESPA, including to ensure responsiveness to borrower requests and complaints and the provision of accurate and relevant information to borrowers, to apply the same procedures to all notices of error as applicable to qualified written requests.** Otherwise, borrowers and servicers must expend wasteful resources parsing the form requirements applicable to qualified written requests and navigating between two separate regulatory regimes. As detailed above, the Bureau believes that the interests of borrowers and servicers are best served and the purposes of RESPA are best met through a single regulatory regime applicable to both qualified written requests and other notices of error. The Bureau is therefore adopting § 1024.35(i)(1) as proposed, as it is consistent with the 60-day reporting prohibition for qualified written requests required by section 6(e) of RESPA.

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

*Id. at 10752 (emphasis added).*

10.     As a direct and proximate result of Freedom's violations of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Plaintiff and the class members have been proximately harmed by Freedom's publishing of derogatory information to the credit reporting agencies subject to disputes regarding the borrower's payments and sums claimed due.  It was prohibited as a matter of law to report such information but did so anyway in disregard of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  These damages include statutory damages available pursuant to 12 U.S.C.A. § 2605(f).

## JURISDICTION AND VENUE:

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since certain of the claims asserted herein arise under the laws of the United States.  The Court also has supplement jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

12.     The Court has declaratory judgment authority pursuant to 28 U.S.C. § 2201, Fed.R.Civ.P. 57, and Fed.R.Civ.P. 23(c)(4).

13.     Venue is proper in this Court as the acts and conduct alleged all occurred in Oregon.

## **PARTIES**

14.      Plaintiff Joseph Tate ("Tate") is a natural person who owns and resides at 4840 Elgarose Road in Roseburg, Oregon (97471-97410 ("Tate Property").  Tate has resided at the Tate Property at all times relevant and material to this action as his personal residence.

15.     Defendant Freedom is a collector (NMLS Lic. No. 49993) and a licensed mortgage servicer in the State of Oregon (NMLS Lic. No. MS-31).  Freedom qualifies as a mortgage servicer pursuant to 12 C.F.R. § 1024.2 since it holds and is responsible for the servicing of Tate's federally related mortgage loan (as that term is defined by 12 U.S.C.A. § 2602(1)).

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

## FACTUAL ALLEGATIONS

### *General Allegations About Freedom's Legal Knowledge*

16.     All persons, including licensed mortgage lender/servicers in the State of Oregon like Freedom, are expected to know the law.

17.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Freedom has a duty to the Plaintiff and Class members to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the CFPB, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605.

18.     Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Freedom is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Freedom is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." It is unreasonable and a violation of its duties for Freedom to demand payments and sums, fees and charges from borrowers that it is prohibited from imposing in the first instance by contract and by law.

19.     Freedom's knowledge is also represented by the standard and uniform Deeds of Trust and mortgages securing its interest in the Tate Property and properties of the putative class members. Each of those standard deeds of trust or mortgage incorporate as material terms of their agreements RESPA and its implementing regulations.

### *Factual Allegations About the Credit Reporting System*

20.     In July 2019 the CFPB issued a report, *Building a Bridge to Credit Visibility*, which explained disputed credit reporting can have material impact on vulnerable consumers.

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

The ability to access credit is a critical component for families and individuals nationwide to have the opportunity to climb the economic ladder, exercise informed consumer choice, build wealth, and achieve economic stability. During this panel, a panelist representing UnidosUS, a Latino nonprofit organization, explained that access to credit can affect consumers' daily lives in many ways, and often means the difference between economic opportunity and fragility. According to this panelist, access to credit affects where consumers reside, work, and go to school; it may also have lasting generational effects.

*Id.* at Page 7.

21.     Previously the Board of Governors of the Federal Reserve System's 2007 "Report to Congress on Credit Scoring and Its Effects on the Availability and Affordability of Credit" explained:

Inaccurate data may cause some consumers to pay more, or less, for credit than is warranted by their true circumstances. For the full benefits of the credit-reporting system to be realized, credit records must be reasonably complete and accurate. Yet, under the country's voluntary system of credit reporting, complete information is not always reported to the credit-reporting system. Moreover, data accuracy is an issue under any credit-reporting system. The accuracy of the data affects both credit scoring and judgmental evaluations because both techniques rely on the quality of the information included in credit reports. Judgmental underwriting, which requires a loan officer's individual attention to an application, provides an opportunity to identify inaccuracies that credit scoring does not.

*Id.* at Page 17.

22.     To help address and avoid the specific, negative consequences of continued, negative reporting by mortgage services (similar to those described in the preceding paragraphs) that are subject to borrower QWR/NOEs, Congress and the CFPB enacted a specific tool in the toolbox of rights and remedies in favor of borrowers—i.e. 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  In plain language the CFPB explains the protection to the Plaintiffs and Class members as follows on its website:

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

Q. Can my mortgage servicer report negative information about me to a credit-reporting agency after I have sent an error dispute or information request?

    A. It depends. If your notice of error is in regards to a payment, your servicer can't provide negative information about that payment to any consumer reporting agency or credit bureau for the 60 days after it receives your notice of error.

https://www.consumerfinance.gov/ask-cfpb/can-my-mortgage-servicer-report-negative-

information-about-me-to-a-credit-reporting-agency-after-i-have-sent-an-error-dispute-or-

information-request-en-209/ (last visited December 9, 2022).

### *Factual Allegations Relevant to Plaintiff Tate*

23.    On or about May 15, 1996, Tate acquired and purchased the Tate Property as his home and residence.

24.     On March 28, 2007, Tate borrowed the sum of $268,800 dollars (subsequently modified effective July 1, 2010 in the amount of 263,281.49) from Nationwide Advantage Mortgage Company for his mortgage loan related to the Tate Property ("Tate Loan") and the Tate Loan was thereafter transferred to Freedom on or about April 1, 2016 which has acted as the mortgage servicer of the Tate Loan thereafter on behalf of its owner Fannie Mae.

25.    The Tate Loan was utilized by Tate exclusively for personal purposes to refinance the prior loan on the Tate Property, pay other consumer debts and other consumer purposes.

26.    Tate has never missed any of his mortgage payments to Freedom on the Tate Loan and has timely paid what was lawfully due based on his contract with Fannie Mae. Yet, as shown *infra*, Freedom botched the servicing and collection of the Tate Loan and demanded disputed sums from Tate.

27.    Beginning in September 2019, Freedom began to falsely and deceptively report to the credit reporting agencies that Tate was late on the Tate Loan. However, Tate had never made

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

a late payment and had also made automatic, on-time payments to Freedom. It was not until a period of less than three years before the commencement of this action that Tate's claims presented in this action accrued and he sustained damages sought herein.

28.     On June 29, 2020 Tate wrote to Freedom in written correspondence to the address it publishes for the receipt of QWRs/NOEs (i.e. P.O. Box 50428, Indianapolis, IN 46250-0401)("First Tate QWR/NOE") concerning Freedom's claims about sums it claimed were due on the Tate Loan. In the First Tate QWR/NOE, Tate specifically:

a.     Disputed the amounts Freedom claim was owed by Tate on his monthly billing statements (identifying June 4, 2020, as one such statement) on the Tate Loan.

b.     Requested Freedom provide him with a complete payment history, including those related to escrow sums, which lists and identifies how Freedom processed and applied each of Tate's payments related to the Tate Loan.

c.     Requested an explanation of how the total amount claimed due from Tate by Freedom on his June 4, 2020, statement from Freedom about the Tate Loan was calculated and why this sum was increased (from prior months).

d.     Requested a breakdown of any current escrow sums claimed due and a history of his annual escrow statements for the prior three years related to the Tate Loan.

e.     Requested identification of the balance in any suspense account as of June 29, 2020, and reason(s) any funds were deposited into suspense related to the Tate Loan.

29.     Freedom received the First Tate QWR/NOE (at the address it publishes for the receipt of QWRs/NOEs (i.e. P.O. Box 50428, Indianapolis, IN 46250-0401) on or before July 6, 2020, and it acknowledged receipt of the QWR/NOE in correspondence to Tate dated July 6, 2020).

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

30.     In response to the First Tate QWR/NOE, Freedom failed to perform any investigation. Instead, it wrote to Tate in backdated correspondence dated June 26, 2020 (a date that precedes the date of First Tate QWR/NOE), and acknowledged receipt of the First Tate QWR/NOE but responded by simply identifying Fannie Mae as the owner/trustee of the Tate Loan. Freedom provided no further response to the First Tate QWR/NOE which is an admission that it performed no reasonable investigation into the First Tate QWR/NOE since it identified no responses to Tate's other inquires and identified errors.

31.     Freedom acknowledged receiving the First Tate QWR/NOE on or before July 6, 2020, and expressly determined the First Tate's QWR/NOE was subject to RESPA.

32.     In violation of its mandatory duty pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Freedom furnished adverse information to the credit reporting agency known as TransUnion LLC regarding payments subject to First Tate's QWR/NOE. It furnished this adverse information on or about August 5, 2020, and September 5, 2020 (which were within sixty days of Freedom's receipt of the First Tate QWR/NOE).

33.     In violation of its mandatory duty pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Freedom furnished adverse information to the credit reporting agency known as Equifax Information Services, LLC regarding payments subject to the First Tate QWR/NOE. It furnished this adverse information on or about August 5, 2020, and September 5, 2020 (which were within sixty days of Freedom's receipt of the First Tate QWR/NOE).

34.     In violation of its mandatory duty pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Freedom furnished adverse information to the credit reporting agency known as Experian Information Services Inc. regarding payments subject to the First Tate

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

QWR/NOE. It furnished this adverse information on or about August 5, 2020, and September 2020) (which were within sixty days of Freedom's receipt of the First Tate QWR/NOE).

35. Notwithstanding his efforts to try to resolve the situation with Freedom and its misapplication of his payments, Tate wrote to Freedom in good faith again in correspondence dated July 26, 2022.

36. In his July 26, 2022 correspondence to Freedom at the address it publishes for the receipt of QWRs/NOEs (i.e. P.O. Box 50428, Indianapolis, IN 46250-0401)("Second Tate QWR/NOE") concerning Freedom's claims about sums it claimed were due and false credit reporting on the Tate Loan. In the Second Tate QWR/NOE, Tate specifically:

    a. Disputed the amounts Freedom claimed were owed on various credit reports from July 2020 to the present.

    b. Notified Freedom of the errors in responding to the First Tate QWR/NOE.

    c. Asked Freedom how it could claim he was delinquent when he never missed a payment and refused Freedom's efforts to refund escrow sums paid and necessary to pay the taxes and insurance on the Tate Property.

    d. Requested a breakdown of any current escrow sums claimed due and a history of his annual escrow statements for the prior three years related to the Tate Loan.

    e. Requested various information to understand Freedom's accounting of the Tate Loan in the three years from the date of the correspondence.

37. Freedom received the Second Tate QWR/NOE (at the address it publishes for the receipt of QWRs/NOEs (i.e. P.O. Box 50428, Indianapolis, IN 46250-0401) on August 2, 2022, and it acknowledged receipt of the QWR/NOE in correspondence to Tate dated August 4, 2022,

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

in which it stated, "We have received your notice of error/request for information" as part of its standard, form letter.

38.     In response to the Second Tate QWR/NOE, Freedom failed to perform any investigation as it admitted that it would not comply with its duties under U.S.C.A. § 2605(e)(3) to suppress the credit reporting subject to period of disputed payments. Instead, it provided misleading and inconsistent information which did not explain or account for the fact that Tate had never missed a payment, refused to receive the funds tendered to him as 'escrow refunds' and simply continued to rely upon Freedom's inaccurate computer data to claim Tate owed sums he does not owe.

39.     Freedom acknowledged receiving the Second Tate QWR/NOE on August 2, 2022, and expressly determined the Second Tate QWR/NOE was subject to RESPA.

40.     In violation of its mandatory duty pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Freedom furnished adverse information to the credit reporting agency known as Equifax Information Services, LLC regarding payments subject to the Second Tate QWR/NOE. It furnished this adverse information on or about August 31, 2022 (which were within sixty days of Freedom's receipt of the Second Tate QWR/NOE).

41.     In violation of its mandatory duty pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Freedom furnished adverse information to the credit reporting agency known as Experian Information Services Inc. regarding payments subject to the Second Tate QWR/NOE. It furnished this adverse information on or about August 31, 2022) (which were within sixty days of Freedom's receipt of the Second Tate QWR/NOE).

42.     Tate has been harmed as a result of Freedom's acts and omissions described herein and that harm includes economic and non-economic damages in the form of emotional distress

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

damages manifested by frustration, fear, mental distress, anxiety, and worry. More specifically he reasonably feared Freedom's continued reporting, which it did not cease to report for the sixty days following receipt of the First Tate QWR/NOE and Second Tate QWR/NOE, would negatively impact his other credit by reporting him as delinquent when he was not and Freedom was barred by RESPA from doing so.

43. Tate's fears were realized when each of the credit bureaus reporting the derogatory information disputed by Tate in the Tate QWR/NOE to others including OnPoint Community Credit Union P.O. Box 3750 Portland, OR 97208.

44. Tate is also entitled to certain statutory damages under the claims asserted herein.

## CLASS ALLEGATIONS:

45. The Named Plaintiff brings certain claims, *infra*, on behalf of a class of similarly situated persons related to Defendant Freedom under Fed.R.Civ.P. 23 ("Freedom Class"). The Plaintiff proposes, as the definition of the Freedom Class, that it be defined as follows:

> All residential loan borrowers for whom Freedom acknowledged in writing having received a QWR/NOE correspondence since three years before the commencement of this action pursuant to 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41. Excluded from the class are any borrowers who obtained a discharge under Chapter 7 of the Bankruptcy Code after the date Freedom received their QWR/NOE.

46. Tate qualifies as a member of the Freedom Class and has agreed to serve as its Named Representative.

47. Tate reserves the right to amend the class definition stated above as this matter progresses based on the discovery obtained and/or create subclasses as appropriate.

48. The Named Plaintiff brings certain of their Freedom Class claims solely upon the basis of Fed.R.Civ.P. 23(c)(4) to determine certain issues on a class-wide basis including: the

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

issue of Freedom's liability for actual damages to the Freedom Class members under RESPA (to which they can proceed and pursue in separate individual actions in their locations).

49.    The particular members of the Freedom Class are capable of being described without difficult managerial or administrative problems.  The members of the Freedom Class are also readily identifiable from the information and records in the possession or control of the Defendant or its affiliates and agents and from public records.  Freedom is required to maintain this information for the entire class period.  *See e.g.*12 C.F.R. § 1024.38(c)(requiring mortgage servicers like Freedom to maintain the required information electronically and have the ability to produce the documents and data within five days as necessary).

50.    The Freedom Class members are sufficiently numerous, exceeding more than one hundred persons, that individual joinder of all members is impractical.  This allegation is based on a data search of public records which identify that thousands of public complaints have been filed against Freedom and it services thousands of residential, mortgage loans throughout the United States and as a matter of public records in the State of Oregon alone, Freedom has an interests in hundreds of consumer, mortgage loans that were in default or believed to be in default during the class period in which borrowers would be most entitled and likely to utilize their rights pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).

51.    There are questions of law and fact common to the Freedom Class which predominate over any questions affecting only individual members of the Freedom Class and, in fact, the wrongs alleged against the Defendant by the Freedom Class and the remedies sought by Named Plaintiffs and the Freedom Class members against the Defendant are identical.

52.    These common questions of law are fact for the Freedom Class members include but are not limited to:

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

a. whether Freedom has a legal duty to request the consumer reporting agencies to suppress any derogatory credit reporting information about the Named Plaintiff and Freedom Class members pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) that is subject to a qualified written request or notice of error;

b. whether Freedom has a duty to furnish any information about the Named Plaintiff and Freedom Class members to the credit reporting agencies;

c. whether Freedom's policy, practice, and procedure governing the suppression of disputed credit information in relation to the Named Plaintiff's and the Freedom Class members' QWR/NOEs complies with its statutory duties (that are also incorporated into the contracts between it and the Plaintiff and Freedom Class members) stated in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1); and

d. whether Freedom's conduct fits a pattern and practice of 12 U.S.C.A. § 2605 violations (including violations of RESPA's implementing regulations).

53. Freedom's defenses (which defenses are denied) would be typical or identical for each of the member of the Freedom Class and will be based on the same legal and factual theories.

54. Certification of the Freedom Class under Fed.R.Civ.P. 23 is appropriate as to the members of the Freedom Class in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.

55. A class action will cause an orderly and expeditious administration of claims by the members of the Freedom Class and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

56. The only individual questions concern the identification of members of the Freedom Class. This information can be determined by a ministerial examination of public records

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

or from the Defendant's business records (which it is required by RESPA and Regulation X to maintain) or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party. Named Plaintiff does propose pursuant to Fed.R.Civ.P. 23(c)(4) for the Court to determine Freedom's liability for actual damages to the Freedom Class members so they may pursue those individual damages in separate actions as necessary or appropriate based on their individual circumstances.

57. The Named Plaintiff's claims are typical of the claims of the Freedom Class members pursuant to Fed.R.Civ.P. 23 since they are based on and arise out of identical facts constituting the wrongful conduct of the Defendant.

58. Tate will also fairly and adequately represent and protect the interests of the Freedom Class. He is similarly situated with, and has suffered similar injuries as, the Freedom Class he seeks to represent. He has also retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Tate does not have any interests which might cause him not to prosecute this action vigorously or are otherwise adverse to the interests of the members of the Freedom Class. He feels that he and the Freedom Class and members have been wronged, wish to obtain redress of the wrong, and want Defendant stopped from failing to comply with its mandatory duties stated in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).

59. The Freedom Class members have suffered actual damages, losses, and harm similar those sustained by Tate described above.

60. If certain of the damages among the class members are not common and uniform or cannot be managed on a class-wide basis, Tate shall seek only an award of statutory damages on behalf of the Freedom Class along with a judgment of liability in favor of the Freedom Class

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

for their actual damages so they may seek their own individual, actual damages under the claims asserted herein in separate actions (if they wish to do so). Tate does seek his individual, actual damages in this action.

### FIRST CLAIM FOR RELIEF--VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
### ("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41
### (On behalf of the Named Plaintiffs Individually and
### on behalf of the Freedom Class)

61.     The Named Plaintiff adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

62.      The Named Plaintiff and Freedom Class members are "borrowers" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

63.     Freedom is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41 in relation to the Named Plaintiffs and Freedom Class members.

64.     Pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Freedom has legal duties to cease furnishing or providing adverse information to any consumer reporting agency regarding any payments that are subject to QWR/NOEs from the Named Plaintiff and Freedom Class members that it has received and acknowledged receipt.

65.     The Named Plaintiff and the Freedom Class members each sent Freedom QWR/NOEs concerning disputed payments and sums claimed due by Freedom and Freedom acknowledged in writing receipt of that QWR/NOE correspondence it received at the specific address it published for that purpose. It is Freedom's legal duty and burden to determine whether the correspondence it receives from borrowers like Tate qualifies as a QWR/NOE and as part of its policy, practices, and procedures it makes such evaluations on a routine and regular basis.

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

66. In contravention of its mandatory duties pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) and as part of its pattern, practice, and custom during the three years proceeding the commencement of this action, after acknowledging receipt of the QWR/NOE correspondence, Freedom did not suppress its credit reporting to the credit reporting agencies, including Experian, Equifax, and TransUnion, related to the period of times disputed by the Named Plaintiff's and the Freedom Class members' QWR/NOEs.

67. Upon information and belief, based upon the experiences of the Named Plaintiff and the following facts and allegations (in addition to those stated in ¶¶ 1, 6-7 *supra*), Freedom has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 and its implementing regulations for borrowers like the Named Plaintiff and Freedom Class members:

a. In an Amended Complaint filed in the United States District Court for the Eastern District of Virginia (Norfolk Division)(Case No. 2:21-cv-00633)(i.e. *Paul v. Freedom*), the borrowers detailed RESPA and Regulation X claims against Freedom for multiple violations of § 2605 including: (i) failing to reasonably investigate multiple QWR/NOEs and inquiries; and (ii) failing to take timely action to avoid foreclosure.

b. In a Second Amended Complaint filed in the United States District Court for the District of Maryland (Southern Division)(Case No. 8:19-cv-03305)(i.e. *Brooks v. Freedom* (and others), the borrower detailed RESPA and Regulation X claims against Freedom for multiple violations of § 2605 including: (i) Freedom's failures to comply with (i) § 2605 and 12 C.F.R. § 1024.35's credit reporting requirements subject to this action; and (ii) 12 C.F.R. § 1024.41(b)(c)'s loss mitigation requirements.

c. The reported appellate decision in *Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 439 (4th Cir. 2020) concluding that the borrower stated a claim against Freedom for

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

violating RESPA's requirement in§ 2605(g) to timely pay items which were escrowed as part of the loan.

68.     The Named Plaintiff and each Freedom Class member suffered nominal damages of no less than $5.00 to take the time and expense to send their QWR/NOEs to Freedom which entitled them to certain rights—including those stated in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1)—which amount to actual damages since as part of Freedom's custom, practice, and policy it never seeks to suppress any negative, derogatory reporting to the credit reporting agencies subject to the QWR/NOE.

### SECOND CLAIM FOR RELIEF--VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT, <br> (ORS 646.608, *et seq.*; OAR 137-020-0805) <br> (On behalf of the Named Plaintiff Individually)

69.     Plaintiff incorporates by reference all preceding paragraphs.  This claim is on behalf of the named plaintiff individually.

70.     The Tate Loan and the Freedom Class's loans serviced by Freedom Mortgage were entered into for personal, family, or household purposes.

71.     Defendant is the servicer of the Tate Loan and the Freedom Class's loans within the meaning of OAR 137-020-0800(3).

72.      Defendant has willfully violated the Oregon Unlawful Trade Practices Act, ORS 646.608 and its implementing mortgage servicing rules, including OAR 137-020-0805(5), by failing to comply with the requirements of the the Real Estate Settlement Procedures Act of 1974, specifically, the credit reporting suppression provisions of 12 U.S.C. 2605(e)(3).

73.     Defendant has willfully violated the Oregon Unlawful Trade Practices Act, ORS 646.608 and its implementing mortgage servicing rules, including OAR 137-020-0805(6), by

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

failing to comply with the requirements of the the Real Estate Settlement Procedures Act of 1974, specifically, the credit reporting provisions of 12 U.S.C. 2605(e)(3), thus violating the OAR 137-020-0805(6) requirement that loan servicers deal with borrowers in good faith.

74.     Defendant has engaged in a reckless or knowing use or employment of a method, act or practice declared unlawful by ORS 646.608(u). Defendant is therefore liable to Tate and the Freedom Class for their ascertainable loss of money and property, including postage incurred to send QWR letters to Freedom that were not honored, the exact amount of which will be proven at trial, or statutory damages of a minimum of $200.00 per class member pursuant to ORS 646.638(1).

75.     Pursuant to the Court's equitable powers under ORS 646.636 and 646.638(1), defendant should be ordered to suppress negative credit reporting in compliance with RESPA and OAR 137-020-0805(6) .

76.     Defendant is also liable to plaintiffs for their costs and reasonable attorney fees, pursuant to ORS 646.638(3), and pre-judgment interest through the date of judgment in the amount of nine-percent per annum.

77.     Defendant's failure to suppress negative credit reporting was conducted with malice or, alternatively, with callous or reckless indifference to Tate's and the Freedom Class's health and welfare, warranting an award of punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for:

1. On his first First Claim for Relief (RESPA):

I.     Named Plaintiff and Freedom Class members ask this Court to certify the

Freedom Class pursuant to Fed.R.Civ.P. 23 and appoint the Named

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

Plaintiff as class representatives and the undersigned counsel as Class Counsel;

II. Named Plaintiff and Freedom Class members ask this Court to determine the issue of Freedom's liability to the Freedom Class members for awards of actual damages for its violations of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) pursuant to 12 U.S.C.A. § 2605(f)(2)(A) and Fed.R.Civ.P. 23(c)(4), along with prejudgment interest. If necessary and in the alternative, to permit the Freedom Class members to pursue their actual damages, if any, in separate actions but to determine liability in favor of the Named Plaintiff individually and award individual, actual damages in this action to them in the sum of $25,000 to the Named Plaintiff, along with prejudgment interest;

III. Named Plaintiff and Freedom Class members ask this Court to determine the issue of Freedom's liability to the Named Plaintiff and Freedom Class members for an award of statutory damages available pursuant to awards of actual damages for its violations of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) pursuant to 12 U.S.C.A. § 2605(f)(2)(B)(i) in the sum of $1,000,000 since Freedom's net worth exceeds $100,000,000;

IV. Named Plaintiff and Freedom Class members ask this Court to award to them their costs and attorney fees to them and their undersigned counsel pursuant to 12 U.S.C.A. § 2605(f)(3); and

V. Named Plaintiff requests the Court provide such other or further relief as the Court deems appropriate including attorney fees and costs in relation to

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

the First Claim for Relief of this Complaint.

2. On his Second Claim for Relief (UTPA):

I.  Named Plaintiff asks this Court to determine the issue of Freedom's liability to him for an award of actual damages for its violations of the Oregon Unlawful Trade Practices Act for his ascertainable loss of money and property, including but not limited to postage required to send his QWR letters to Freedom that were not faithfully and fully honored, the exact amount of which will be proven at trial, along with prejudgment interest in favor of the Named Plaintiff individually and award individual, actual damages in this action to them in the sum of $20,000.00 to the Named Plaintiff, along with prejudgment interest;

II. Plaintiff, individually also seeks statutory damages of $200.00 under ORS 646.638(8) because he has sustained an ascertainable loss of money or property as a result of a reckless or knowing use or employment by the defendant of a method, act or practice declared unlawful by ORS 646.608(u), as promulgated under the mortgage servicing rules at OAR 137-020-0805;

III. Named Plaintiff also asks this Court to award to him his costs and attorney fees to him and his undersigned counsel pursuant to ORS 646.638(3); and

IV. Named Plaintiff requests the Court provide such other or further relief as the Court deems appropriate equitable relief pursuant to Count II of this Complaint.

ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503/789-7372
Fax: 503/345-6655

JURY DEMAND:

Plaintiff hereby demands trial by jury.

Dated this 12th day of December, 2022.

*/s/ Hope Del Carlo*
Hope Del Carlo, OSB #002410
Elemental Law LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
hope@elemental.law
Tel: 503-789-7372
Fax: 503-345-6655

*/s/ Phillip Robinson (with permission)*
Phillip Robinson
Consumer Law Center, LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
phillip@marylandconsumer.com
Tel: 301-448-1304
(PRO HAC VICE ADMISSION PENDING)


*/s/ Dale Pittman (with permission)*
Dale Pittman
The Law Office of Dale W. Pittman, PC
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
dale@pittmanlawoffice.com
Tel: 804-861-6000
Fax: 804-861-3368
(PRO HAC VICE ADMISSION PENDING)

Of Attorneys for Plaintiffs