IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**JOSEPH A. TATE**, on behalf of himself individually and on behalf of a Class of similarly situated persons;

        Plaintiffs,

   v.

**FREEDOM MORTGAGE CORPORATION**,

        Defendant.

Civ. No. 6:22-cv-01922-AA

**OPINION AND ORDER**

_____

AIKEN, District Judge:

      Plaintiff Joseph A. Tate brings this putative class action on behalf of himself and others against defendant Freedom Mortgage Corporation for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, et seq., and the Oregon Unlawful Trade Practices Act, ORS 646.608.  Before the Court is defendant's motion to dismiss plaintiff's amended complaint, and in the alternative, to strike plaintiff's class allegations.  ECF No. 25.  The Court GRANTS in part and

Page 1 – OPINION AND ORDER

DENIES in part defendant's motion to dismiss; DENIES defendant's motion to strike class allegations, and DENIES defendant's motion to strike pleadings.

## STATUTORY FRAMEWORK

### I.      Real Estate Settlement Procedures Act

Enacted in 1974, RESPA regulates the market for real estate "settlement services," a term the statute defines to include "any service provided in connection with a real estate settlement," such as "title searches, . . . title insurance, services rendered by an attorney, the preparation of documents, property surveys, [and] the rendering of credit reports or appraisals[.]" 12 U.S.C. § 2602(3).

Subsection (e) of § 2605 imposes a duty on loan servicers to respond to borrower inquiries regarding the loan's servicing. An inquiry must take the form of a "qualified written request," or "QWR." A QWR is written correspondence identifying the borrower's account and including "a statement of the reasons" for borrower's belief that the account is in error or providing detail sufficient to alert the servicer to other information sought by the borrower. *Id*. Once a servicer receives a QWR, it is obligated to respond in writing within 30 days and make necessary corrections to the account. § 2605(e)(1)-(2).

Also, for a 60-day period beginning on the date the servicer receives a QWR relating to a dispute about the borrower's payments, a servicer may not provide information about overdue payments disputed in the borrower's QWR, to any consumer reporting agency. § 2605(e)(3); *see also* 12 C.F.R. § 1024.35(i)(1) (implementing regulation stating, "[a]fter receipt of a notice of error, a servicer may

not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error.").

The substantive provisions of § 2605 are enforceable through actions for damages brought by consumers against "[w]hoever fails to comply" with § 2605. *See* § 2605(f). An individual may recover an amount equal to the sum of "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements" of § 2605, not to exceed $2,000. *Id.*

## II.    Unlawful Trade Practices Act

Oregon's statutory consumer protection scheme, as embodied in the UTPA, specifically incorporates compliance with RESPA into Oregon law. The UTPA makes violations of RESPA actionable as violations of the UTPA, as stated in the Attorney General's mortgage servicing rules that implement ORS 646.608(u), found at OAR 137-020-0805(6). A mortgage servicer engages in unfair or deceptive conduct under the UTPA if it ". . . [f]ails to comply with . . . 12 USC 2605(e)[.]" OAR 137-020-0805(5). The OARs also require loan servicers to deal with borrowers in good faith. *See* OAR 137-020-0800. "Good faith' means honesty in fact and the observance of reasonable standards of fair dealing[.]"

### BACKGROUND

## I.    Factual Allegations

The Court accepts as true the following factual allegations in plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In March 2007, plaintiff

refinanced his home, borrowing $268,800 dollars ("the loan") from Nationwide Advantage Mortgage Company to do so.  Am. Compl. ¶¶ 24-25.  In April 2016, Nationwide transferred the loan to defendant, which acts as a servicer for Fannie Mae.  *Id*. ¶ 25.  Plaintiff made timely payments on the loan to defendant.  *Id*. ¶ 26. Plaintiff states that defendant "botched the servicing and collection" of the loan and "demanded disputed sums" from plaintiff.  *Id*. ¶ 27.  In September 2019, defendant reported to credit reporting agencies that plaintiff was late on the loan payments, though plaintiff maintains that his payments were always on time and that defendant erred in its escrow allocations.  *Id*. ¶¶ 27-28.

In June 2020, plaintiff submitted a QWR to defendant at its official address to dispute the amounts defendant claimed plaintiff owed.  *Id*. ¶ 29.  Specifically, plaintiff alleges that he requested a complete payment history and a breakdown of escrow sums; sought explanation for how owed sums were calculated and why those sums had increased from prior months; and asked defendant to identify balances in suspense accounts and reasons for those balances.  *Id*. ¶¶ 29 (b)-(e).  In July 2020, defendant acknowledged it received plaintiff's QWR.  *Id*. ¶ 30.  Responding to plaintiff's QWR, defendant identified Fannie Mae as the owner of the loan, but did not provide any information answering plaintiff's remaining inquires.  *Id*. ¶ 31. Plaintiff asserts that defendant failed to investigate his inquiries. *Id*.

Further, contravening the requirement in § 2605(e)(3) to suppress credit reporting for 60 days after receiving plaintiff's QWR, defendant furnished to TransUnion, Equifax, and Experian the adverse information plaintiff had disputed.

*Id.* ¶¶ 32-35. Defendant reported the adverse information to the credit reporting agencies on August 5 and September 5 of 2020. *Id.*

Two years later, plaintiff sent a second QWR to defendant in July 2022. Plaintiff disputed the sums defendant claimed were past due; requested a breakdown of escrow sums over a three-year period; and contested defendant's "false credit reporting" on the loan. *Id.* ¶¶ 37 (a)-(e).

Defendant acknowledged receiving plaintiff's second QWR on August 2, 2022, and responded to plaintiff, but allegedly provided "misleading and inconsistent information which did not explain or account for the fact that [plaintiff] had never missed a payment." *Id.* ¶¶ 38-40. Plaintiff states that defendant did not reasonably investigate, and that defendant again violated § 2605(e)(3) when it failed to suppress credit reporting to Equifax and Experian. *Id.* ¶¶ 38-42.

Plaintiff alleges that he was "harmed as a result of [defendant's] acts and omissions," and that the harm includes economic damages from the credit bureau's derogatory credit reporting to OnPoint Community Credit Union, containing information plaintiff had disputed with defendant. *Id.* ¶¶ 43. Plaintiff claims that as a result of defendant wrongfully reporting him delinquent when he was not, he was denied access to credit; offered credit at high interest rates compared to market rates; and did not pursue purchases that required use of credit. *Id.* ¶¶ 43 (a)-(d)

Plaintiff also claims non-economic damages for emotional distress caused by the adverse credit reporting such as fear, anxiety and worry about defendant's continued reporting. *Id.* ¶ 43, 43 (e).

Plaintiff further alleges entitlement to statutory damages based on defendant's "pattern or practice" of violating § 2605. *Id.* ¶ 46. To allege entitlement to statutory damages, the amended complaint incorporates complaints against defendant published on the complaint database of the Consumer Financial Protection Bureau ("CFPB") in multiple jurisdictions for violating § 2605. *Id.* ¶ 65 (a)-(i). Plaintiff sets forth the complaints of those borrowers as factual support that defendant engaged in a pattern and practice.

## II.    Purported Class Action Allegations

Plaintiff also seeks to assert claims on behalf of a class, proposing the following class definition:

> All residential loan borrowers for whom [defendant] acknowledged in writing having received a QWR/NOE correspondence at the specific address it publishes for such correspondence since three years before the commencement of this action pursuant to 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.35. Excluded from the class are any borrowers who obtained a discharge under Chapter 7 of the Bankruptcy Code after the date [defendant] received their QWR/NOE or any borrowers whose inquiries to [freedom] were mailed to any other address other than the one designated by it pursuant to 12 C.F.R. § 1024.35(c).

*Id.* ¶ 47. Plaintiff also sets forth allegations describing (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.* ¶ 47-66.

## LEGAL STANDARD

## I.    Motion to Dismiss Under Rule 12(b)(6)

Under FRCP 12(b)(6), a district court should grant a motion to dismiss when the complaint fails to "state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, a complaint must set forth facts supporting a plausible claim, not merely a possible claim for relief. *Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 983 (D. Or. 2015). In considering a FRCP 12(b)(6) motion to dismiss, a court must accept the plaintiff's material factual allegations as true and in the light most favorable to the plaintiff. *Id.* Yet a court need not accept as true any legal conclusions set forth in the complaint. *Id*

## II.    Motion to Strike under Rule 23(d)(1)(D)

Under FRCP 23(d)(1)(D), a trial court may order "that the pleadings be amended to eliminate allegations about representation of absent persons." *See also Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1328 (D. Or. 2014) (noting that Rule 23(d) authorizes motion to strike class allegations). Although a plaintiff typically bears the burden to prove that class certification is appropriate, "in the context of a motion to strike class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable." *Id*. at 1340–41. In evaluating the sufficiency of class allegations, courts do not apply the FRCP 12(f) standard for a motion to strike. *See Speers v. Pre-Employ.com, Inc.*, 2014 WL 2611259, at *2 (D. Or. May 13, 2014). Instead, the question is whether "'the complaint

demonstrates that a class action cannot be maintained.'" *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014) (quoting *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010)).

## DISCUSSION

### I.    RESPA Claim – Recoverable Damages

Plaintiff's amended complaint alleges that defendant violated RESPA when it failed to suppress credit reporting after plaintiff submitted a written dispute about his loan. *See generally* Am. Compl. ¶¶ 24-46.  Plaintiff has alleged that: (1) he is a borrower, *id.*, ¶¶ 24-26, of a federally related mortgage, *id.*, ¶ 25; (2) which defendant services, *id.*, ¶¶ 25-42; (3) plaintiff sent two QWRs to defendant, *id.*, ¶¶ 29, 36-37; (4) of which defendant acknowledged receipt, *id.*, ¶¶ 30, 38; (5) but defendant failed to perform a reasonable investigation and failed to stop its derogatory credit reporting for a period of sixty days as required by RESPA and its regulations, *id.*, ¶¶ 31-35, 39, 40-42; and (6) as a proximate result of defendant's violation, plaintiff sustained specific, actual damages, *id.*, ¶¶ 43-46.

Defendant moves to dismiss the complaint under Rule 12(b)(6), contending that plaintiff cannot show "actual damages."  Defendant challenges all three categories of damages plaintiff asserts, stating that plaintiff's claims for noneconomic damages, economic damages, and statutory damages (based on a pattern or practice of violation) fail to state a claim.

### A.    *Noneconomic Damages*

Plaintiff claims emotional distress damages. Am. Compl. ¶¶ 43, 43 (e). Defendant argues that damages from emotional distress are not "pecuniary" in nature, and thus insufficient to allege "actual damages"—an essential element of a claim under § 2605. Mot. to Dismiss ("Mot.") at 7-8.

The Ninth Circuit has not established whether noneconomic damages constitute "any actual damages" under § 2605(f), nor has it stated whether damages must be "pecuniary" in nature. District Courts in the Ninth Circuit are divided. *See Zeich v. Select Portfolio Servicing, Inc.*, 2015 WL 10353128, at *2 (D. Or. Oct. 30, 2015) (noneconomic damages fail to state a claim under RESPA); *Subramaniam v. Beal*, 2013 WL 5462339, *7 (D.Or. Sept. 27, 2013) (same); *but see Hackett v. Wells Fargo Bank, N.A.*, 2018 WL 1224410, at *5 (C.D. Cal. March 5, 2018) (emotional harm sufficient to recover actual damages under RESPA; collecting cases); *Lucero v. Cenlar FSB*, 2016 WL 337221, at *4 (W.D. Wash. Jan. 28, 2016) (same).

The Court finds cases in its own District most instructive. Accordingly, to the extent the amended complaint alleges emotional distress damages manifested by frustration, fear, mental distress, anxiety, and worry, plaintiff fails to state a claim under § 2605. *Zeich*, 2015 WL 10353128, at *2. Defendant's motion is granted as to this issue.

### B.   *Economic Damages*

#### 1.   **Postage Costs**

Defendant challenges plaintiff's allegation that postage to mail his QWRs constitutes actual damages. Defendant argues that, because postage costs cannot

have been proximately caused by defendant's failure to suppress credit reporting, the pleading falls short.  Mot. at 9.

Courts have found that "[a]ctual damages may include, but are not limited to, (1) out-of-pocket expenses incurred dealing with the RESPA violation." *Ponds v. Nationstar Mortg.*, LLC, 2016 WL 3360675, at *6 (C.D. Cal. June 3, 2016).  Persuasive authority recognizes postage costs as actual damages when incurred as a result of the RESPA violation.  *See Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 671 (10th Cir. 2018) (unpublished decision) ("[I]f Bank of America's nonresponse or inadequate response prompted [the plaintiffs] to resend a QWR, then the costs of preparing the subsequent QWR are indeed traceable to the violation."); *Baez v. Specialized Loan Serv., LLC*, 709 F. App'x 979, 983 (11th Cir. 2017) (unpublished decision) ("[T]he cost of sending an initial request for information is not a cost to the borrower 'as a result of the failure' to comply with a RESPA obligation."); Ponds, 2016 WL 3360675, at *6 (recognizing "postage fees" as actual damages).

Plaintiff responds that he "generally agrees" that postage related to QWRs is not typically recoverable damages for the first inquiry to which a servicer responds. Resp. at 30, ECF No.26.  But he contends that he postage to send the second letter "was caused because [p]laintiff had to send his second QWR to correct the errors incurred when [defendant] did not correct errors raised in the first QWR." *Id*.

The Court finds that plaintiff has plausibly alleged sufficient information for the Court and defendant to infer that defendant's violation caused plaintiff to incur postage.  That is, if defendant had not failed to correct the violation identified in

plaintiff's first QWR, plaintiff would not have mailed the second QWR. Plaintiff's claim satisfactorily demonstrates that his postage costs are traceable to defendant's alleged violation. Defendant's motion to dismiss is denied as to that issue.

## 2.    Negative Credit Reporting

Next, defendant contends that plaintiff's allegations of negative credit reporting are insufficient as a matter of law to state a claim. Mot. at 10.

Courts in this circuit have determined that negative credit reports alone generally do not constitute actual damages to state a RESPA claim. *Agredano v. Cap. One, Nat'l Ass'n*, 2019 WL 3207765, at *1 (N.D. Cal. July 16, 2019). However, allegations that a plaintiff "was denied specific refinancing opportunities as a result of said credit reports suffices to show actual damages." *Id*.; *see also Anokhin v. BAC Home Loan Servicing, LLP*, 2010 WL 3294367, at *3 (E.D. Cal. Aug. 20, 2010) ("To constitute actual damages, the negative credit rating must itself cause damage to the plaintiff as evidenced by, for example, failing to qualify for a home mortgage."). The Court finds those determinations helpful.

Here, plaintiff alleges harm from defendant's reporting to the credit agencies of past due amounts plaintiff had disputed. Am. Compl. ¶ 43. Defendant's negative reporting to the credit agencies resulted in those agencies provided derogatory information to OnPoint Community Credit Union, plaintiff's bank. *Id*. Plaintiff claims that as a result of defendant reporting him delinquent, plaintiff was denied access to credit; offered credit at high interest rates compared to market rates; and did not pursue purchases that required use of credit. *Id*. ¶¶ 43 (a)-(d). Accordingly,

the Court finds that, under liberal federal pleading standards, plaintiff has adequately alleged actual damages based on negative credit reporting, and defendant's motion to dismiss is denied on that issue.

### C.    *Statutory Damages*

Defendant asserts that plaintiff fails as a matter of law to state any facts plausibly supporting a right to statutory damages under RESPA.  Mot. at 13

#### 1.    "Additional" Damages

Defendant contends that § 2605(f)(1)(B) permits "additional damages" "in the case of a pattern or practice of noncompliance with the requirements of [§ 2605]," and, because plaintiff has not pled "actual damages," there can be no "additional damages."  Plaintiff alleges a basis for additional damages in several respects.  Am. Compl. ¶¶ 31-42; Resp. at 20.

Because the Court determined plaintiff has sufficiently pled facts supporting an inference that defendant is liable for "actual damages," its argument that plaintiff cannot seek "additional damages" fails and defendant's motion to dismiss is denied as to this issue.

#### 2.    Pattern or Practice

Next, defendant makes two arguments why plaintiff fails to allege facts showing a "pattern or practice" of RESPA violations.  Mot. at 14.  First, defendant contends that plaintiff's two assertions of RESPA violations cannot count as a "pattern or practice," because, well, two is too little.  Then defendant argues that plaintiff's allegations of additional RESPA violations—obtained from the CFPB

Page 12 – OPINION AND ORDER

database—"may contain factually incorrect information," and "cannot be properly relied on" to plausibly show that defendant "actually committed" the RESPA violations alleged in those complaints. *Id.* at 15.[1]

Defendant's arguments would be well-taken at a later stage of litigation. However, we are at the motion-to-dismiss stage, and Federal Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

Discovering whether defendant "actually committed" the violations stated by borrowers in the CFPB database is not a prerequisite to pleading statutory damages for which the Court can find support. Plaintiff's assertions that defendant violated RESPA as to him, combined with other borrower complaints that defendant violated RESPA as to them, is enough to plausibly allege "a pattern or practice of noncompliance with the requirements of [RESPA]." § 2605(f)(1)(B); *see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247–48 (11th Cir. 2016) (stating the same). Accordingly, defendant's motion to dismiss is denied as to this issue.

## II. UTPA Claim

Defendant asserts that plaintiff's claim under the UTPA fails as a matter of law because it does not allege any recoverable ascertainable loss. Mot at 18.

The UTPA states that

person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful by ORS 646.608, may bring

---

[1] Plaintiff's Amended Complaint ¶ 65 contains more than a half-dozen accounts from borrowers claiming defendant violated § 2605.

an individual action in an appropriate court to recover actual damages
or statutory damages of $200, whichever is greater.

ORS 646.638(1). Thus, to "bring an individual action" under ORS 646.638(1), a
person must have suffered an "ascertainable loss of money or property." *Id.* The
Oregon Supreme Court applies this language literally, holding that "the loss required
for a UTPA claim must be specifically of 'money or property, real or personal.'"
*Pearson v. Phillip Morris, Inc.*, 358 Or. 88, 117 (2015). When a complaint fails to
allege such a loss, it fails to state a claim and must be dismissed. *See Paul v.
Providence Health Sys. Or.*, 351 Or. 587, 603 (2012) (affirming trial court's dismissal
of UTPA claims in which the plaintiffs failed to allege damages "compensable under
the UTPA."); *Creditors Protective Ass'n, Inc. v. Britt*, 58 Or. App. 230, 233 (1982)
(explaining that, under the UTPA, "a plaintiff must plead and prove an ascertainable
loss of money or property").

Specific to his UTPA claim,[2] plaintiff alleges two items he asserts constitute
an "ascertainable loss." First, he incurred postage costs when he mailed the second
QWR letter to defendant to dispute amounts owed and request correction of its
servicing errors. Am. Compl. ¶ 31. Second, plaintiff alleges the right to recover "fees
imposed and collected [by defendant] after [defendant] failed to comply with its legal
duties after receipt of each QWR Letter…" *Id.*, Prayer for Relief, § 2. Plaintiff asserts
that defendant "breached its contractual and legal promises" to "comply with RESPA"
by "churning sums for its own profits." Am. Compl. ¶ 44. Plaintiff asserts that fees

---

[2]     Plaintiff's UTPA claim does not include a claim for emotional distress damages or for damage
to credit, thus defendant's arguments as to those claims will not be considered.

defendant collected, which "should have been deleted" from plaintiff's account are "causally linked to the violation of the UTPA." Resp. at 24.

The Court has already determined that the postage cost for the second QWR constitutes actual damages proximately caused by defendant's violation of RESPA, and thus an ascertainable loss under the UTPA. Defendant's motion to dismiss on that issue is denied.

As to plaintiff's claims for fees defendant charged, those allegations do not set forth facts sufficient for the Court or defendant to draw a reasonable inference that such fees were charged in violation of RESPA, and consequently, a violation for purposes of a claim under ORS 646.638(1). Accordingly, defendant's motion to dismiss is granted as to this issue.

Finally, defendant argues that because plaintiff has failed to allege an "ascertainable loss," he cannot state a claim for statutory damages under the UTPA. Mot at 20.

ORS 646.638(1) provides that a person who has suffered an ascertainable loss of money or property as a result of an unlawful act may seek "to recover actual damages or statutory damages of $200, whichever is greater."

Because the Court determined that plaintiff's postage costs incurred for sending his second QWR constitute an ascertainable loss, plaintiff has properly stated a claim for statutory damages under the UTPA and defendant's motion to dismiss is denied as to this issue.

## III.    Motion to Strike Class Allegations under Rule 23

Defendant moves, in the alternative, to strike plaintiff's class allegations because establishing liability would require individualized and fact-specific inquiries for each proposed class member under the governing law. Mot. at 22. Defendant also contends that plaintiff's proposed class definition is overly broad—the class would contain many individuals whose rights were not violated, and the definition contemplates a nationwide class even though the facts alleged all occurred in Oregon and the claims arise in part under Oregon law. Defendant also asserts that, on the facts alleged, a class action is not a superior method for fairly and efficiently adjudicating the controversy.

Noted above, class actions are governed by Rule 23. Under Rule 23(a), a district court may certify a case as a class action only if four requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Wang v. Chinese Daily News Inc.*, 737 F.3d 538, 542–43 (9th Cir. 2013). As noted above, a motion to strike class allegations is appropriate where the pleading shows that the plaintiff will be unable to satisfy the requirements of Rule 23. Although class certification issues are generally dealt with by motion for certification, courts in the Ninth Circuit have struck class allegations where it is apparent that the class cannot be properly certified. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152–53 (N.D. Cal. 2010).

That said, courts in this circuit have denied motions to strike class allegations before discovery as premature. *See Mattson v. New Penn Fin., LLC*, No. 2018 WL 6735088, at *2 (D. Or. Nov. 6, 2018), *F&R adopted*, 2019 WL 123870 (D. Or. Jan. 4,

Page 16 – OPINION AND ORDER

2019).  Further, courts in this District have instructively determined that a motion to strike is not the appropriate vehicle for arguments about class treatment, which should be addressed at the class certification stage.  *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1066–67 (D. Or. 2014)

Accordingly, the Court finds that defendant's motions to dismiss or strike the class allegations are premature and are denied, but without prejudice as to defendant's ability to move to strike or dismiss the class allegations if class certification is sought.

## IV.    Motion to Strike Pleadings Under Rule 12(f)

Under Rule 12(f), defendant moves to strike plaintiff's factual allegations in ¶¶ 1 (a), 1 (b), 1 (c), 73 (a), 73 (b), and 73 (c) referring to other lawsuits or complaints against it arguing that there are immaterial and impertinent.  Mot. at 32.

Courts have discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A Rule 12(f) motion to strike "is disfavored and should only be granted if the asserted defense is clearly insufficient as a matter of law under any set of facts the defendant might allege." *Est. of Osborn-Vincent v. Ameriprise Fin., Inc.*, 2019 WL 764029, at *5 (D. Or. Jan. 3, 2019), *F&R adopted*, 2019 WL 943379 (D. Or. Feb. 25, 2019).  The Court declines to exercise its discretion to apply such a drastic remedy and defendant's motion to strike is denied as to this issue.

## CONCLUSION

In sum, plaintiff cannot state a claim for emotional distress damages under RESPA, and cannot state a claim for damages for fees for loan servicing under the UTPA. In line with this Order, defendant's motion to dismiss, ECF No. 25, is GRANTED in part and DENIED in part.  Defendant's motions to strike, class allegations, made together with its motion to dismiss, is DENIED without prejudice. Defendant's motion to strike pleadings, made together with its motion to dismiss, is DENIED.  The parties are directed to contact the Court to schedule a status conference to propose next steps in this case.

IT IS SO ORDERED.

Dated this 17th day of November 2023.


_____
s/ Ann Aiken

Ann Aiken
United States District Judge